**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WAYNE KAPLAN,

    *Plaintiff*,

v.                                        CASE NO. 13-cv-14554

COMMISSIONER OF                DISTRICT JUDGE GERSHWIN A. DRAIN
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

**II.    REPORT**

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff Wayne Kaplan was 40 years of age at the time of the alleged disability onset date. (Transcript, Doc. 7-2 at 50.) Plaintiff's work history includes employment as an assembler and a security guard. (Tr. at 49.) Plaintiff filed the instant claims on November 30, 2010 alleging that he became unable to work on November 1, 2008. (Tr. at 40.) The claims were denied at the initial administrative stages. (*Id.*) On May 17, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Earl A. Witten, who considered the application for benefits *de novo*. (Tr. at 56-81.) In a decision dated June 22, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 40-51.) On August 15, 2012, Plaintiff requested a review of this decision. (Tr. at 36.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 29, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 22-24.) On October 31, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Substantial evidence is "more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v.*

*Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since November 1, 2008, the alleged onset date. (Tr. at 42.) At step two, the ALJ found that Plaintiff's

cognitive disorder, NOS, also diagnosed as Borderline Intelligence, Attention Deficit Hyperactivity Disorder (ADHD), depressive disorder, diabetes, status post sepsis, and status post hernia repair were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 42-44.) Significantly, the ALJ considered whether Plaintiff met or equaled the criteria of listing 12.02 (Organic Mental Disorders) only. At step four, the ALJ found that Plaintiff could perform his past relevant work as an assembler and security guard. (Tr. at 49.) In the alternative, the ALJ found that Plaintiff could perform sedentary jobs that exist in significant numbers in the national economy. (Tr. at 50.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 51.)

### E. Administrative Record

Plaintiff's education records indicate that Plaintiff was diagnosed with a mild delay in both receptive and expressive language, and a severe delay in articulation development at the age of four. (Tr. at 269.) Later testing revealed that Plaintiff also suffered from visual perception difficulties, but normal intelligence. (*Id*.) Plaintiff was discharged from private speech therapy upon placement in a developmental first grade, where he was to continue speech therapy for his lingering language problems. (*Id*.)

A Huron Valley Schools Psychological Report on Plaintiff dated September 6, 1974 noted an evaluation in March 1974 by Children's Medical Group in Jacksonville, Florida found (1) microencephaly, (2) small stature, (3) minimal brain dysfunction, (4) thumb sucker,

8

(5) borderline mental retardation (functioning), strong manipulative behavior. (Tr. at 270.) Recommendations included: (1) continued language therapy, (2) special school placement, (3) behavior modification techniques, (4) administer Dextroamphetamine 5 mg/5mg. (*Id.*) The report relates a history of poor coordination, poor motor control, and inability to follow instructions. (*Id.*) A high activity level was noted to adversely affect Plaintiff's mental functioning. (*Id.*) The report notes that developmental milestones were reached at a slower rate than normal. (*Id.*) Testing conducted as part of the psychological evaluation revealed a Wechsler Intelligence Scale for Children Verbal IQ of 99, Performance IQ of 78 and a Full Scale IQ of 88. (Tr. at 272.) The examiner noted that Plaintiff's test behavior and early history resemble that of a perceptually handicapped child, that on the WISC, the triad of Block Design, Object Assembly and Coding are significantly below the balance of the scaled scores and that reduced efficiency on Information, Arithmetic and Digit Span on the Verbal subtests was significant. (Tr. at 273.) The examiner recommended Plaintiff for the Learning Disabled program, continued medication and intensive speech services. (Tr. at 276.)

A follow-up evaluation six months later yielded similar IQ scores and the determination that Plaintiff was then functioning at the lower limits of the average range of intelligence. (Tr. at 281.)

Plaintiff was re-evaluated through the Huron Valley School District in July 1980, at the age of twelve. (Tr. at 283.) The re-evaluation report noted that Plaintiff's fifth grade Achievement Test scores placed him in the first percentile for reading, and the sixth

percentile for math. (*Id.*) On the WISC, Plaintiff earned a Verbal score of 80, a Performance score of 78, and Full Scale score of 78.  (Tr. at 284.)  The examiner determined that Plaintiff was functioning in the dull normal range of cognitive abilities and recommended he continue in Special Education for Emotionally Impaired and Learning Disabled. (Tr. at 284-285.)

A Summary Report of Educational Performance and Teacher Observations completed in May 1987, just prior to Plaintiff's graduation from high school, revealed that, according to the Woodcock-Johnson Test of Achievement, Plaintiff could read and write at a second to third grade level, had math skills equivalent to a third or fourth grade level, and a knowledge fund of a fourth to seventh grader.  (Tr. at 290.)  He was deemed severely disabled in all these categories.  (*Id.*)

In February 1992, Plaintiff was diagnosed with Attention Defecit Disorder, Residual, as well as, Developmental Disorder.  (Tr. at 291.)  Kevin J. Wildenhaus, Ph.D., a licensed psychologist, found Plaintiff to be limited in his intellectual abilities and recommended a training facility for the developmentally impaired. (*Id.*)  Plaintiff was again tested on the WAIS-R scale, scoring a 75 Verbal IQ, 83 Performance IQ and 77 Full Scale IQ. (Tr. at 292.) Evaluating neuropsychologist, John Fisk, Ph.D. noted that those working with Plaintiff

> should not be mislead with his friendly (albeit immature) interpersonal style and his ability to express himself fluently in casual conversation into thinking he is more competent than is actually the case.  Indeed, I think there is good reason to believe that some of his presenting social problems are secondary to cognitive limitations.

(Tr. at 294.)  Dr. Fisk noted that Plaintiff continued to take stimulant medication.  (*Id.*)

Consulting Examiner John Jeter, MA, LLP, LLMSW, reported that Plaintiff had not received treatment for his ADHD since age 25, but Plaintiff could not provide a reason for cessation of treatment. (Tr. at 566, 569.) Mr. Jeter observed no ADD/ADHD signs during his examination. (Tr. at 569.) Mr. Jeter noted that Plaintiff was unable to subtract 7s from 100 in three minutes, 3s from 100 in two minutes or 3s from 20 in two minutes. (*Id*.) Mr. Jeter opined that Plaintiff's problems were primarily physical, treatable with therapy or medical interventions and MRS training. (*Id.*) He found no impairment in Plaintiff's ability to understand and carry out simple instructions, or make judgments with simple work-related decisions. (*Id*.) Finally, Mr. Jeter noted that Plaintiff was verbal, friendly, pleasant, and that he responds to and creates humor, smiles easily and had no apparent mood disorder. (*Id.*)

Jonathan D. Shy, Ph.D., a licensed psychologist, conducted a psychological evaluation on Plaintiff in May 2012. (Tr. at 592-596.) Dr. Shy administered the WAIS-IV testing on Plaintiff; Plaintiff scored 70 on the Verbal Comprehension Index, 73 on the Perceptual Reasoning Index, 66 on the Working Memory Index, 71 on the Processing Speed Index, with a Full Scale IQ of 65. (Tr. at 594.) Dr. Shy could not account for the large difference in Plaintiff's scores compared to those achieved by Plaintiff in 1974, other than to posit that they could represent a decline in functioning over the years. (*Id.*) Dr. Shy noted that Plaintiff appeared to put forth his best effort during testing and made no effort to exaggerate his symptoms. (Tr. at 594-595.)

Dr. Shy noted a normal mental status examination, but reported that Plaintiff could

not complete serial 7s or 3s. (Tr. at 595.) He noted that Plaintiff correctly computed 8 + 5, but calculated 2 x 2 as 6, and could not compute 5 x 3 or 4 ÷ 2. (*Id*.) Further, Dr. Shy noted that Plaintiff exhibited Low Average capabilities in Abstract Reasoning and Judgment, but Average capabilities for general fund of information. (*Id*.) Dr. Shy ultimately concluded that Plaintiff had a moderately severe impairment in his ability to carry out complex tasks, to interact appropriately and effectively with co-workers and supervisors, and to adapt to changes in the work setting. (Tr. at 596.) Dr. Shy further opined that Plaintiff might have a moderate impairment in his ability to do work-related activities. (*Id*.)

In November 2010, Plaintiff was diagnosed with severe epididymal orchitis and prostatitic abscess, resulting in sepsis and cystoscopy with prostatic unroofing. (Tr. at 548, 550.) Plaintiff was hospitalized from November 21, 2010 to December 9, 2010 at Pontiac Osteopathic Hospital. (Tr. at 298-362.) Plaintiff was discharged to the Omni Continuing Care Center where he continued to receive IV antibiotics until December 30, 2010. (Tr. at 553-562.) Plaintiff continued to take oral antibiotics and suffered urinary incontinence after surgery and treatment for the infections . (Tr. at 551.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who could

> lift 20 pounds occasionally, and ten pounds frequently...stand and/or walk six hours out of an eight-hour day...sit at least six hours out of an eight-hour day...with the following restrictions of occasional contact with supervisors and coworkers, and no contact with the public....Jobs should be considered simple, repetitive, SVP: 1 or 2 type jobs.

(Tr. at 78.) The VE responded that such a person could perform Plaintiff's past relevant work as an assembler. (*Id.*)

The VE was then asked to also consider the same hypothetical individual but who could "lift up to 10 pounds occasionally, five pounds frequently." The VE responded that such an individual could perform sedentary work as a surveillance system monitor (400 regional jobs), assembly bench worker (1,710 regional jobs) and packer (2,055 regional jobs). (Tr. at 79.)

The VE was additionally asked to consider a hypothetical wherein the individual was restricted to jobs with only one or two steps in them. (*Id.*) The VE responded that such a person could still perform his past relevant work as an assembler but that would eliminate the surveillance system monitor position. The VE also testified that he could work as an inspector bench worker (600 regional jobs.) (*Id.*)

### F. Analysis and Conclusions

Plaintiff argues that the ALJ erred by failing to discuss whether Plaintiff's intellectual disability met or equaled Listing 12.05C, and that this error requires remand. (Docs. 11, 13.)[2]

As previously noted, if a claimant does not have current substantial gainful

---

[2] Like the plaintiff in *Clifton v. Colvin*, 2014 WL 2946655 at *11 (N.D.Ohio, July 1, 2014), Plaintiff failed to raise the issue of Listing 12.05C before the ALJ. He did, however, raise it before the Appeals Council. (Tr. at 263.) In addition, although the Commissioner notes that Plaintiff never raised the issue of an intellectual disability at his administrative hearing, the Commissioner does not expressly argue that Plaintiff has forfeited the issue on review. "Because a potential forfeiture may itself be forfeited, ...[a district court] may decide whether the listing applies to this case." *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013); *see also, Clifton*, 2014 WL 2946655 at *11.

employment and suffers from a qualifying severe impairment, the ALJ must assess whether the claimant satisfies a listed impairment. *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. §416.920(a)(4)(iii). If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled. *Id*.

Although an ALJ need not discuss every listing, or any listing that the applicant clearly does not meet, if the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing. *Id*.

Under the Listing at issue here,

> intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A,B,C, or D are satisfied....C. A valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05C. In considering Listing 12.05C, district courts in this circuit have held that an IQ score of 70 or less, even in combination with other "severe" impairments may not always raise a substantial question as to whether a claimant meets this listing. *Clifton v. Colvin*, 2014 WL 2946655 at *10 (N.D.Ohio, July 1, 2014). Instead, a claimant must also satisfy the diagnostic description in the introductory paragraph of the listing, i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested before age 22." *Id* (quoting *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Accordingly, courts are to consider whether a claimant has raised a

14

substantial question as to each of the requirements set forth in Listing 12.05. *Id*(citing *McClellan v. Astrue*, 804 F.Supp.2d 678, 690-691 (E.D.Tenn. 2011); *Smith v. Colvin*, 2013 WL 4591501 at *7 (E.D.Tenn. Aug. 28, 2013); *Hall v. Astrue,* 2012 WL 6924162 at *7 (E.D.Tenn. Dec. 11, 2012)). Moreover, a substantial question about whether a claimant meets a listing requires more than "a mere toehold in the record" on any essential element of the listing. *Id* at *11(quoting *Sheeks,* 544 Fed. Appx. at 641-642).

In the case at bar, I suggest that Plaintiff has adduced evidence in support of each element of Listing 12.05C sufficient to raise a substantial question as to whether he met or equaled the requirements of that listing. A remand to allow the ALJ to meaningfully consider the issue I suggest is required. *See id* at *13.

As an initial matter, Plaintiff has shown a valid verbal, performance or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Plaintiff underwent IQ testing in May 2012 during which he scored a full scale IQ of 65. (Tr. at 594.) Although not expressly arguing that Plaintiff's full scale IQ score was invalid, the Commissioner casts aspersions on its validity by noting that Plaintiff's 2012 test results did not include a verbal or performance score and that they were inexplicably and markedly lower than IQ scores Plaintiff achieved in 1974, at the age of six. (Doc. 12, p. 15.)

The Commissioner's assail of Plaintiff's 2012 IQ score is without merit. First, Plaintiff's 2012 testing was the WAIS-IV, which replaced the verbal and performance

subscales from earlier WAIS versions with the verbal comprehension, perceptual reasoning, working memory and the processing speed subtests. *See* Wikipedia, *Wechsler Adult Intelligence Scale*, http://en.wikipedia/wiki/WechslerAdultIntelligenceScale (describing WAIS-IV)(as of November 17, 2014, 16:59 GMT)  Moreover, even the defunct component scores were still in use, the absence of a noted verbal or performance IQ score would be immaterial because the regulations specify that in cases where more than one IQ score is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, the **lowest** of these scores is used in conjunction with 12.05. *Clifton*, 2014 WL 2946655 at *11(citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00D6c)(emphasis added).  Thus, even if the record included these IQ scores and they were higher than 70, the lowest score would be considered for evaluating Plaintiff under the Listing.

Similarly, the marked decline in Plaintiff's full scale IQ from 1974 to 2012, which test administrator Dr. Shy theoretically attributed to a decline in Plaintiff's functionality over time, is not meaningful.  The regulations for IQ tests administered to children recognize the limited temporal validity of test scores obtained before age 16.  20 C.F.R. Pt. 404, Subpt. P, App.1, §112.00D10. Specifically, the regulations dictate that IQ test results obtained before the age of 7 are current for only one year if the tested IQ is 40 or above.  *Id.*  Thus, I consider Plaintiff's full scale IQ score of 65 as sufficient to raise a substantial question as to whether he has met this component of the Listing.  *See Clifton*, 2014 WL 2946655 at *11.

Additionally, the ALJ expressly found that Plaintiff suffered the severe impairments of Attention Deficit Hyperactivity Disorder (ADHD); depressive disorder; diabetes; status post sepsis; and status post hernia repair. (Tr. at 42.) These findings, I further suggest, are sufficient to raise a substantial question as to whether Plaintiff has satisfied the Listing requirement of a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Clifton,* 2014 WL 2946655 at *11; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A; 20 C.F.R. §§404.1520(c) and 416.920(c).

Plaintiff has also raised a substantial question as to whether he satisfied the requirements of the introductory paragraph of Listing 12.05, namely significantly subaverage general intellectual functioning; deficits in adaptive functioning; and, evidence that the condition began before age 22. *See Clifton*, 2014 WL 2946655 at *12; *see also*, *Sheeks*, 544 Fed. Appx. at 641. Evidence in the record indicates that Plaintiff was enrolled in special education for learning disabilities from at least the first grade through graduation. (Tr. at 269-290.) Plaintiff's earliest psychological records (March 1974) reflect a diagnosis of "borderline mental retardation,"[3] and the final psychological evaluation report from Huron Valley School District notes that Plaintiff read at a second to third grade level, functioned at a third to fourth grade level in math, had the general knowledge fund of a fourth through

---

[3]The Commissioner argues that the ALJ did not err in failing to considering Listing 12.05C because Plaintiff was never diagnosed with mental retardation. First, this argument is belied by the evidence in record that indeed reflects a diagnosis of borderline mental retardation. (Tr. at 270.) Moreover, a medical diagnosis, one way or the other, is simply not conclusive to determine if a claimant meets Listing 12.05; it is the Listing itself that provides the diagnostic criteria for mental retardation. *McClellan*, 804 F.Supp.2d at 692.

seventh grader and was considered "severely disabled" in all these categories. (Tr. at 270, 290.) This same report also reflects that Plaintiff was retained once during his academic career. (Tr. at 290.) This evidence, combined with Plaintiff's full scale IQ score of 65, is, I suggest, sufficient to raise a substantial question regarding whether Plaintiff has met the requirement set forth in Listing 12.05 of significantly subaverage general intellectual functioning. *See Clifton*, 2014 WL 2946655 at *12.

With regard to deficits in adaptive functioning, defined by the Sixth Circuit as "effectiveness in areas such as social skills, communication and daily living skills," the evidence in record indicates that Plaintiff has had difficulty with social skills and daily living skill both before and after the age of 22. *Id (*citing *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)). Plaintiff's school records reflect that he was referred for psychological evaluation by a teacher concerned about Plaintiff repeatedly stealing objects and denying guilt even when it was obvious. (Tr. at 277.) In 1980, a Huron Valley School District psychologist advised that behavior management techniques be incorporated in his special education plan to address manipulative behaviors. (Tr. at 285.) Plaintiff testified at his administrative hearing to having conflicts with co-workers or supervisors. (Tr. at 44.) Dr. Shy opined that Plaintiff was moderately impaired in his ability to appropriately interact with co-workers and supervisors. (Tr. at 596.) The ALJ ostensibly agreed with this conclusion, incorporating a restriction for only occasional contact with co-workers and no contact with the general public in Plaintiff's RFC. (Tr. at 44.)

Additionally, the record contains evidence suggesting continuing deficits in Plaintiff's daily living skills. Plaintiff reported to Dr. Jeter that he struggled with managing his money and that his father assists with the paying of his bills. (Tr. at 567.) Dr. Jeter and Dr. Shy alike concluded that Plaintiff was not capable of managing his own funds. (Tr. at 569, 596.) The record indicates that Plaintiff has lost his driver's license due to failure to pay traffic tickets, and has been arrested and jailed multiple times for failure to appear in court and nonpayment of child support. (Tr. at 44, 567-568, 593.) While not determinative of whether Plaintiff would, in fact, meet the adaptive functioning deficits requirement of Listing 12.05, this evidence, I suggest, certainly raises a substantial question as to this issue. *See Clifton*, 2014 WL 2946655 at *12.

Finally, as discussed more fully above, Plaintiff has identified sufficient evidence to raise a substantial question as to onset before age 22. Plaintiff was in special education classes for learning disabilities from 1st through 12th grade, and exhibited deficits in his adaptive functioning during those years as well. (Tr. at 269-290.)

Accordingly, I find Plaintiff has raised a substantial question as whether he has met or equaled the requirements of Listing 12.05C. Because the ALJ failed to mention, much less analyze, the evidence discussed above, a remand is necessary to allow the ALJ the opportunity to meaningfully consider whether Plaintiff meets or equals the requirements of 12.05C. Because this matter is being remanded for further proceedings, and in the interests of judicial economy, I will not consider Plaintiff's remaining assignments of error.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                             s/ *Charles E Binder*
                                                           CHARLES E. BINDER
Dated: November 19, 2014                        United States Magistrate Judge